```
        IN THE UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF ARKANSAS
                FAYETTEVILLE DIVISION
```

LEROY FRANKLIN, THOMAS TERRILL,
JAMES CARROLL, TIMOTHY BRACE, and
DAVID RUFF, Individually and on behalf of
all others similarly situated                                   PLAINTIFFS

              v.           Civil No. 07-5002

GENERAL TRUCKING, LLC and BASIC
CONSTRUCTION CO., INC.                                          DEFENDANTS

## MEMORANDUM OPINION AND ORDER

NOW on this 12th day of May, 2008, the above referenced matter comes on for this Court's consideration of the **Motion for Summary Judgment** (document #38) filed by the plaintiffs, and **Defendants' Motion for Summary Judgment** (document #50) filed by General Trucking, LLC and Basic Construction Co., Inc. The Court, having reviewed the pleadings of the parties, and all other matters of relevance, and being well and sufficiently advised, finds and orders as follows:

    1.   The plaintiffs, Leroy Franklin, Thomas Terrill, James Carroll, Timothy Brace, and David Ruff, individually and on behalf of all others similarly situated, seek damages from the defendants for violations of the WARN Act which is codified at 29 U.S.C. § 2101 *et seq*. The plaintiffs claim the defendants terminated their employment without giving sixty (60) days notice in violation of the WARN Act.

The instant cross-motions for summary judgment address two issues:

\*   whether defendants should be considered a "single employer" for purposes of the WARN Act; and,

\*   whether plaintiffs were employed at a "single site of employment" as defined by the WARN Act.

Both plaintiffs and defendants contend that there are no genuine issues of material fact to be resolved regarding these two issues and that, pursuant to Rule 56 of the Federal Rules of Civil Procedure they are entitled to summary judgment on both.

2.   The standard to be applied to a motion for summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure and provides for the entry of summary judgment on a claim

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

F.R.Civ.P. 56©; *see also* Carroll v. Pfeffer, 262 F.3d 847 (8th Cir. 2001); Barge v. Anheuser-Busch, Inc., 87 F.3d 256 (8th Cir. 1996). Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Accordingly, all evidence must be viewed in the light "most favorable to the non-moving party." F.D.I.C. v. Bell, 106 F.3d 258, 263 (8th Cir. 1997); *see also* Bailey v. United States Postal Service, 208 F.3d 652, 654 (8th Cir. 2000).


Where a movant makes and properly supports a motion for summary judgment, the opposing party may not rest upon the allegations or denials of its pleadings; rather, the non-movant must "set forth specific facts showing that there is a genuine issue for trial." Liberty Lobby, 477 U.S. at 256. The non-moving party must "make a sufficient showing on every essential element of its case for which it has the burden of proof at trial." Wilson v. Southwestern Bell Tel. Co., 55 F.3d 399, 405 (8th Cir. 1995).

    3.    For the purpose of considering the motions for summary judgment and based upon the pleadings submitted by the parties, the Court believes the following material undisputed facts appear:

* At all times relevant, Gary Combs was the sole owner of Basic Construction, Inc. (hereinafter "Basic"), General Trucking, LLC (hereinafter "General Trucking"), and several other companies.

* Mr. Combs occupied all positions of officers and directors in all these companies.

* Each new hired employee for Basic and General Trucking was provided the same Information Handbook for Employees.

* Each new hired employee for Basic and General Trucking was required to sign the same Acknowledgment of Receipt and Understanding and the Nondisclosure Agreement.

* Each new hired employee for Basic and General Trucking was provided the same Substance Abuse and Alcohol Policy pamphlet

and was required to sign the same statement verifying that they read and understood the policy and would abide by all rules.

* General Trucking performed all of the construction transportation hauling for Basic.

* Often, General Trucking charged Basic less than they charged other companies for their services.

* The maintenance on General Trucking's 120 dump trucks was largely performed by Basic mechanics. The maintenance performed by the Basic mechanics initially took place in the Basic building. After a building was built for General Trucking, the Basic mechanics worked on the General Trucking trucks in the service bays of General Trucking's building.

* General Trucking and Basic shared a common wash bay. Basic employees would wash the General Trucking dump trucks at night and would also re-fuel the dump trucks.

* Both General Trucking vehicles and Basic vehicles were fueled out of shared fuel tanks.

* The business cards of at least two General Trucking employees indicated that the employees represented both General Trucking and Basic.

* The email addresses of at least two General Trucking employees were ____@BasicConstruction.US.

* General Trucking employees responsible for outside sales would work to acquire jobs for both General Trucking and Basic –

frequently handing out flyers, literature, caps and other items that included the Basic name.

\*   General Trucking employees were encouraged to try to sell Basic services and items such as top soil, fill dirt and sand.

\*   The street address for Basic is 1695 Electric Avenue in Springdale, Arkansas; General Trucking is located on the same parcel of land, with the street address being 1651 Electric Avenue in Springdale, Arkansas.

\*   Common company meetings were held for both Basic and General Trucking – it was mandatory that all employees of both Basic and General Trucking attend these meetings.

\*   Both Basic and General Trucking had the same company policies.  At one time, those company policies were shaped by a committee which included three employees from General Trucking, three employees from Basic, as well as others.

\*   Company policy for both Basic and General Trucking was ultimately made and decided upon by Gary Combs.

\*   Gary Combs was the sole individual responsible for making the decision to terminate the employees and sell all of the dump trucks from General Trucking and the equipment from Basic.

\*   Basic and General Trucking are covered under a master workers compensation insurance policy issued by State Auto Insurance Company.  Curtis Vaughn, Human Resources Manager for

Basic, was, at all times relevant, responsible for allocating the cost of this insurance coverage between Basic and General Trucking. General Trucking was billed and paid for its pro rata share of each premium.

*   Basic and General Trucking were covered under master policies for property insurance and health insurance. State Auto Insurance Company provided property coverage. Health insurance was provided by Cigna. Basic and General Trucking were billed separately for the cost of their insurance coverage by State Auto and Cigna, and each company paid for coverage separately.

*   Employee benefits for both Basic and General Trucking, including group insurance, life insurance, disability insurance, workers' compensation and the 401(K) plan were in the name of Basic Construction Company. The employee plan sponsor or plan administrator for all of these policies or benefits is Basic Construction Company. Curtis Vaughn, the Human Resources Manager for Basic, would allocate the premiums to be paid by General Trucking when necessary.

*   David Ruff, supervisor of the asphalt and paving crew for Basic would personally hand-pick General Trucking drivers that would be utilized on his job sites for Basic. He picked these "A-team" drivers on a regular basis. Additionally, Mr. Ruff would regularly reserve General Trucks – to be driven by the "A-team" drivers – giving Basic priority over the other customers of

General Trucking.  When these drivers were dispatched to the Basic job sites, they were under the supervision and control of Ruff and he could send those drivers home or enforce other disciplinary action over those drivers.

\*      David Ruff, supervisor of the asphalt and paving crew for Basic, had the phone numbers for General Trucking drivers, dispatchers, and sales persons and would contact them directly to arrange for General Trucking drivers and trucks to be present on Basic job sites where he was supervisor.

4.    The WARN Act requires that employers give workers sixty (60) days notice prior to a plant closing or mass layoff.  29 U.S.C. § 2102.  The Act defines an employer as "any business enterprise that employs 100 or more employees, excluding part-time employees . . . ."  29 U.S.C. § 2101(a)(1).  It is undisputed that in order to establish that General Trucking was liable under the WARN Act, the plaintiffs must prove that both Basic and General Trucking constitute a "single employer".

Further, also relevant in this case concerning WARN Act liability is whether the plaintiffs can prove that a "mass layoff" occurred.  "The term 'mass layoff' means a reduction in force which . . . results in an employment loss at the single site of employment . . . ."  29 U.S.C. § 2101(a)(3).  Whether the employment loss occurred at a "single site of employment" is the second issue in the instant motion.

**SINGLE EMPLOYER**

5.   "To impose affiliated corporate liability, a plaintiff must establish that the two corporations are a 'single business enterprise.'" Geelan v. Mark Travel, Inc., 2006 WL 3610804 (D.Minn. Dec. 11, 2006)(quoting Pearson v. Component Technology Corp., 247 F.3d 471, 482 (3rd Cir. 2001)).  The WARN Act itself does not address this "single employer" issue, however, the Department of Labor regulations under the Act provide as follows:

> Under existing legal rules, independent contractors and subsidiaries which are wholly or partially owned by a parent company are treated as separate employers or as a part of the parent or contracting company depending upon the degree of their independence from the parent. Some of the factors to be considered in making this determination are (i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations.

20 C.F.R. § 693.3(a)(2)(hereinafter referred to as the "DOL regulations").   The  Department  of  Labor's  "supplementary information" regarding the WARN Act regulations further explains that:

> The intent of the regulatory provision relating to independent contractors and subsidiaries is not to create a special definition of these terms for WARN purposes; the definition is intended only to summarize existing law that has developed under State Corporations laws and such statues as the NLRA, the Fair Labor Standards Act (FLSA) and the Employee Retirement Income Security Act (ERISA).  The Department does not believe that there is any reason to attempt to create new law in this area especially for WARN purposes when relevant concepts of State and federal law adequately cover the issue.

54 Fed. Reg. 16045 (Apr. 20, 1989). Although the Eighth Circuit Court of Appeals has not addressed this issue or applied the WARN Act and the associated regulations to the "single employer" situation, the issue *has* been addressed by other courts, who, understandably, have noted a significant conundrum:

> The intersection of the regulatory factors and the supplementary information has created considerable confusion among courts searching for a single test to determine the status of affiliated corporations. *See* Cynthia Nance, Affiliated Corporation Liability Under the WARN Act, 52 Rutgers L. Rev. 495, 535-36 (2000) [hereinafter Nance, WARN Act] (describing contradictory holdings). The problem arises because the jurisprudence contains several tests for determining when two corporations compose a single entity depending on whether the cause of action accrues under state or federal law, as well as on the particular type of claim at issue. Further, the DOL factors do not precisely correspond to any of the established tests for such determinations. Courts examining affiliated corporations under the WARN Act have often applied two or more tests, purporting to "average" the results, usually without any systematic method for doing so. *See, e.g.*, United Paperworkers Int'l Union v. Alden Corrugated Container Corp., 901 F.Supp. 426, 436-39 (D.Mass. 1995) (conducting, inter alia, a state alter ego test, but ultimately jettisoning the results on the ground that federal liability standards should not turn on state protections for corporations).

Pearson v. Component Technology Corp., 247 F.3d 471, 483 (3rd Cir. 2001).

In any event, this Court will proceed with its analysis under the DOL regulations – recognizing that method to be not only the prevailing "test" among the jurisdictions, but also largely

consistent with *both* parties' suggested analyses.[1]

6.  \*    COMMON OWNERSHIP

It is undisputed that both Basic and General Trucking were, at all times relevant, solely owned by Gary Combs.

\*    COMMON DIRECTORS AND/OR OFFICERS

It is also undisputed that at all times relevant Gary Combs filled all officer and director positions in both Basic and General Trucking.

\*    DE FACTO EXERCISE OF CONTROL

According to caselaw, "[t]he de facto exercise of control factor is met if the affiliated corporation was the 'decisionmaker responsible for the employment practice giving rise to the litigation.'" Geelan, 2006 WL 3610804(citing Pearson, 247 F.3d at 503-04). The factor has been found to be satisfied when one business has "'disregarded the separate legal personality' of an affiliated entity by directing the entity to act." Geelan, 2006 WL 3610804 (citing Vogt, 318 F.Supp.2d at 144).

Clearly, Mr. Combs, the owner of both entities ultimately controlled the decisions made and actions taken in this matter. The defendants argue that Mr. Combs, as owner, had that right –

---

[1] The Court notes that, with respect to the DOL regulations "no single factor is controlling, and all factors 'need not be present' for liability to attach." Geelan v. Mark Travel, Inc., 2006 WL 3610804 (D.Minn. Dec. 11, 2006) As set forth in Pearson, the DOL test "is intended to discover whether the two nominally separate entities actually functioned as a single business, particularly with regard to labor policy." Pearson, 247 F.3d at 498. The defendants argue that the Court should simply look to "all relevant factors and determine whether one of the affiliated companies exercised control over the other while at the same time attempting to avoid the other's liability;" the Court believes that by using the DOL regulations it ultimately reaches that goal.

this Court agrees that Mr. Combs had that right, but also finds that the facts, on whole, support satisfaction of this element. Facts which support satisfaction of this element include:

- that regular maintenance of General Trucking's trucks was performed by Basic employees;

- that General Trucking employees were directed to represent both General Trucking *and* Basic when seeking business;

- that the actions of General Trucking employees appeared (through common business cards and email addresses) to be controlled by Basic; and,

- that Basic employees had the right to "hand pick" General Trucking drivers and direct driver actions.

* UNITY OF PERSONNEL POLICIES EMANATING FROM A COMMON SOURCE

Basic and General Trucking clearly had identical personnel policies – and those policies emanated from a common source – ultimately Gary Combs. Employees of both entities received the same employee information upon being hired; and, employees of both entities were subject to the same policies and rules. Common employee meetings were held and all employee benefits were identical.

* DEPENDENCY OF OPERATIONS

Finally, there was, undoubtedly, a dependency of operations between Basic and General Trucking. General Trucking performed

-11-

all of the construction transportation hauling for Basic. Basic was charged reduced rates and was given preference over other customers with respect to availability. Although, the defendants argue that such advantages were nothing more than what any service provider would commonly provide to a "regular customer," the Court finds that, when coupled with the other factors present, the facts indicate that Basic and General Trucking were not operating at arm's length and that they should be considered a single employer for purposes of the Act.

Therefore, for the above reasons, the Court finds that Basic and General should be considered a *single* employer for purposes of the WARN Act – and summary judgment should be, and hereby is, granted to the plaintiffs on this issue.

## SINGLE SITE OF EMPLOYMENT

7. The second issue to be addressed is whether the employment loss occurred at a "single site of employment" as required by the WARN Act. 29 U.S.C. § 2101(a)(3).

The WARN Act does not provide a statutory definition of "single site of employment." However, the Department of Labor regulations and comments act as a guide to determining what constitutes a "single site of employment:"

> (I) Single site of employment.
>
>> (1) A single site of employment refer to either a single location or a group of contiguous locations. Groups of structures which form a campus or industrial park, or separate facilities across the street from one another,

may be considered a single site of employment.

(2) There may be several single sites of employment within a single building, such as an office building, if separate employers conduct activities within such a building. For example, an office building housing 50 different businesses will contain 50 single sites of employment. The offices of each employer will be its single site of employment.

(3) Separate buildings or areas which are not directly connected or in immediate proximity may be considered a single site of employment if they are in reasonable geographic proximity, used for the same purpose, and share the same staff and equipment. An example is an employer who manages a number of warehouses in an area but who regularly shifts or rotates the same employees from one building to another.

(4) Non-contiguous sites in the same geographic area which do not share the same staff or operational purpose should not be considered a single site. For example, assembly plants which are located on opposite sides of a town and which are managed by a single employer are separate sites if they employ different workers.

(5) Contiguous buildings owned by the same employer which have separate management, produce different products, and have separate workforces are considered separate single sites of employment.

(6) For workers whose primary duties require travel from point to point, who are outstationed, or whose primary duties involve work outside any of the employer's regular employment sites (e.g., railroad workers, bus drivers, salespersons), the single site of employment to which they are assigned as their home base, from which their work is assigned, or to which they report will be the single site in which they are covered for WARN purposes.

(7) Foreign sites of employment are not covered under WARN. U.S. workers at such sites are counted to determine whether an employer is covered as an employer under § 639.3(a).

(8) The term "single site of employment" may also apply to truly unusual organizational situations where the

>above criteria do not reasonably apply. The application of this definition with the intent to evade the purpose of the Act to provide notice is not acceptable.

20 C.F.R. § 639.3(I).

The Eighth Circuit Court of Appeals addressed this issue in Rifkin v. McDonnell Douglas Corp., 78 F.3d 1277 (8th Cir. 1996). In Rifkin, the Court noted that "[a]s a general rule, geographically related facilities are single sites of employment whereas geographically separate facilities are separate sites." 78 F.3d at 1280.

Clearly, the facilities which house Basic and the facilities which house General Trucking are "geographically related." The "two" facilities are located in very close proximity, with employees for Basic working regularly in the General Trucking area. The employees of Basic and General Trucking attended group meetings in the Basic headquarters or in a warehouse on the site which housed a separate entity, Basic Block Group, LLC. In addition, this Court has found, in the paragraphs above, that Basic and General were so integrally related as to form one "employer" under the WARN Act. All these facts, taken together, lead this Court to find that Basic and General Trucking shared a "single site of employment" under the WARN Act and plaintiffs' motion for summary judgment will be granted in this respect.

## CONCLUSION

8.   For the reasons set forth above the Court finds that:

  * the **Motion for Summary Judgment** (document #38) filed by the plaintiffs should be, and it hereby is **granted**; and,

  * the **Defendants' Motion for Summary Judgment** (document #50), filed by General Trucking, LLC and Basic Construction Co., Inc., should be, and it hereby is **denied.**

  **IT IS SO ORDERED.**

          /s/ Jimm Larry Hendren
          JIMM LARRY HENDREN
          UNITED STATES DISTRICT JUDGE